May it please the court, my name is Stephen Spires with the Federal Public Defender's Office on behalf of Mr. Borino. The purpose of restitution is not to punish the offender, it's to make the victim whole but not to provide a windfall. Here however, the government obtained $48 million in aggregate restitution awards for a fraud offense that by its own account caused at most a $25 million loss. That was error and it resulted in an award that exceeded the maximum authorized by the statute. Now this appeal includes a number of reversible errors, but in my limited time I'd like to focus on the most basic and troubling error. First, why don't you address whether the error was waived here or forfeited. Certainly. Are you going to raise the MVRA properly? Certainly, Your Honor. So the government in their briefing focused a lot on the terms of the appeal waiver to claim that Mr. Borino somehow invited error or waived any error, any argument that restitution did not apply. And I think the government is really over reading what is pretty standard language in a plea agreement where the defendant acknowledges the laws and acknowledges that the parties are making promises in accordance with the law and that the district court will impose a sentence in accordance with the law. But that's different than a defendant agreeing to pay a certain amount of restitution. I think in the Williams case that was cited by the government, the defendant specifically stipulated I will pay a certain amount, a dollar amount of restitution, and then later on appeal tried to get out of that. Here, nothing of the sort. Mr. Borino at most acknowledged that this is the law, but the restitution issue was very heavily litigated in district court. So I don't think there was any invited error or waiver. I think the government is really over reading the language in the plea agreement. And then, you know, while I'm speaking about procedural issues, the appeal waiver. Mr. Borino expressly reserved the right to appeal a sentence in excess of a statutory maximum and that's what he's doing. This court clearly stated in Sharma that an award of restitution greater than a victim's actual loss exceeds the MVRA statutory maximum. You're contesting the amount that was awarded under the MVRA. You're not contesting, as I understand it, whether MVRA applies or not. Is that a correct statement? Well, a few different issues, Your Honor. On plain error, Mr. Borino is contesting that the MVRA applies at all to his offense of misprision of a felony because the MVRA's plain language applies to offenses against property by fraud or deceit, not offenses of concealment like misprision. Now, we acknowledge in our briefing that that issue was not raised in the district court and is reviewed for plain error. But what was preserved was the issue as to whether the classic 105 plain participants were even victims within the meaning of the MVRA, whether they suffered any actual loss and whether that loss was caused by Mr. Borino's offense. You know, there's no doubt, I don't want to minimize the conduct, there's no doubt that the plain participants were victims in the colloquial sense. You know, TTFG, the Yoakum's business whom Mr. Borino worked for, they sold a product to these participants and they made false pretenses. No one's denying that. Mr. Borino pleaded guilty to misprision. He served a year in prison for that conduct. But the MVRA statutorily defines victim very specifically as somebody who has suffered an actual loss as a direct and proximate result of the offense of conviction. And under that definition, the plain participants are not victims. They didn't suffer a loss. And your argument is they came out ahead, right? Some of them may have come out ahead. Our argument is that the government didn't prove there was any actual loss and that the — I think it's important to talk about this, how this plan worked. You know, the government, under its own prosecution and theory of this case, was that the Classic 105 plan was marketed as cost-neutral to participants because of tax incentives. That's what made the plan so enticing. No net costs. You might even come out ahead. So according to the government, that was built into the plan, and according to the government, the plain participants, in fact, did pay millions less in taxes as a result of participating. That's undisputed. And this is amply supported in the record. This was alleged in the indictment. At ROA 43, 44, 45, and 49, these facts were admitted to in the factual basis. At ROA 191 through 194, these facts were recounted in the PSR, 468 and 469. This was discussed in the briefing. Even on appeal, the government's brief acknowledges that the participation fees were largely canceled out, and it admits in its brief that plain participants, in fact, paid less in taxes. That's at page 5 and page 8 of the government's brief. At the restitution hearing, the prosecutor told the district court that the government had even quantified some of the loss to the IRS, because in the separate case against Donna Jokum, which was before a different district judge, it had obtained a $23 million restitution order for the IRS. That's at page 1280 of the record. And that number was likely under-inclusive because it was based on the employer's taxes and didn't include the employees. So the government knew that the employers alone paid $23 million less in taxes as a result of participating in the plan. It had obtained a restitution amount, a restitution order for that amount. But then, as to Mr. Barrino, the government's position was that the loss was the total amount of fees paid into the program, the $25 million, and it said that the tax component was totally separate and too speculative. That's inconsistent with how the government prosecuted the case. It's inconsistent with the evidence. It's inconsistent with the restitution award that the government obtained for the IRS. And it's troubling that the government represented to the district court that it had calculated the IRS's loss, but had not given that, apparently, to Mr. Barrino or the court. So on its face, the government's loss number just doesn't add up, and it doesn't satisfy the MVRA. The maximum potential loss is $25 million. The government has two restitution orders, one for $25 million and one for $23 million. $48 is far greater than $25. Somebody was necessarily awarded a windfall, and that's just the kind of rough justice that the MVRA does not authorize. Now, the government's main response in the district court and on appeal was that it was Mr. Barrino's burden to disprove the government's number by proving the tax piece. But that's wrong. Based on the evidence that we've just discussed, the government's loss number was implausible on its face. It overstated the loss. So the government never established the loss by a preponderance of the evidence, and the burden never shifted to Mr. Barrino to prove or disprove anything. There was no objection to the PSR, is that right? There was no objection to the loss amount for guidelines purposes in the PSR. I think this is an important distinction that was lost in the district court and has been conflated a bit by the district court and by the government. This court's cases make clear that the same evidence can sufficiently establish an offense, may be sufficient for guidelines purposes, but can be insufficient for MVRA restitution purposes because the guidelines calculates loss in a different way than the MVRA. The guidelines says the court should calculate a reasonable estimate of actual or intended loss where the MVRA requires proof of actual loss based on record evidence. Looking at the PSR, the PSR in the sections of the PSR that related to restitution, the PSR actually said restitution is not ascertainable at this time. The victim impact statement of the PSR said restitution is not ascertainable at this time. That's why the district court set a restitution hearing for a later date. So the idea that Mr. Barrino somehow should have objected to a restitution number that wasn't included in the PSR, I don't think there was any sort of concession or anything there because the PSR didn't establish restitution. That was saved for a later date. So the government's response here, as I was saying, was that it was Mr. Barrino's burden, but I think the United States v. Beydoun case explains why that's wrong. So Beydoun was a counterfeit goods case, and in that case, the district court calculated restitution based on the number of infringing goods produced and the gross profits on the goods that the legitimate seller would have earned. And on appeal, this court vacated and remanded for two reasons. One, because the government didn't prove how many of those goods were actually put into commerce to compete with legitimate goods, and two, because the proper loss measure was to account for production costs, because otherwise the legitimate seller would have gotten a windfall. Now, this court didn't say that it was the defendant's burden to prove either of those things. It was the government's burden. So even though the government in Beydoun put forth a number, the burden didn't shift because the government's number and its evidence didn't establish the actual loss. And the same is true here. The government put forth a number, $25 million in fees, but the government's number, based on the evidence, didn't establish loss because we know that in exchange for paying those fees, participants got significant tax offsets. Beydoun also illustrates a couple of the principles that we were just talking about. First, that the same evidence can be sufficient for a loss for guidelines purposes, but not for the MVRA, and second, Beydoun stands for the proposition that the proper measure for restitution is victim's actual loss, not defendant's potential gain. And I think the government and the district court lost sight of those principles and conflated those two ideas by focusing on the fees collected, rather than focusing on whether there was an actual loss. And even if the burden did shift, and it didn't, Mr. Marino satisfied it. For example, in the Ricard case, it's a Medicare kickback case, the defendant's burden was simply to establish that Medicare received some benefit for services, even though they were otherwise fraudulently billed. And here, Mr. Marino's burden, if he had one at all, was to establish that the fees paid were not all out-of-pocket losses because there was a benefit in exchange, and he did that. Planned participants received insurance, medical claims were paid, and planned participants paid millions less in taxes. That was all established by the record in the evidence. It was still a fraud, but that doesn't necessarily mean that there was an actual loss to the planned participants. And the burden rested with the government to prove actual loss. That also makes sense under the statute, because the government had access to the IRS's calculations. So the district court erred by accepting the government's position that the total fees paid were equivalent to loss, and by placing the burden on Mr. Marino to disprove the number. And the district court clearly sensed, looking at the transcript, that there was a problem, because it said that awarding a number less than $25 million would be speculation, because there were so many I don't knows. But that means the government didn't prove the loss. And in that case, the right thing for the district court to do was to award no restitution. Instead, the district court awarded $25 million in restitution, which vastly exceeded the loss. And the government's other argument is that the tax component here is too speculative, because the IRS might assess planned participants' additional taxes in the future. But again, that's really an admission that the planned participants have not yet suffered an actual loss. And the MVRA doesn't allow restitution awards for a future loss. That would be too speculative. Further, to the extent that the IRS in the future does get additional taxes from the planned participants, that would be double recovery, because the IRS already has a restitution order for those taxes. Finally, the government has focused a lot in its briefing on Mr. Barrino's conduct. And as I said earlier, there was a fraud here. Mr. Barrino pleaded guilty. He went to prison. He took responsibility. But the necessary question here is whether a victim suffered an actual loss. And I think this conflation of what the defendants did and what they potentially may have gained versus what a victim actually lost really gets to the how or the why of why this appeal is here today. Again, the same evidence may prove that Mr. Barrino or anyone else broke the law. It may be sufficient for the guidelines. It does not necessarily mean it's sufficient for the MVRA, which is far more exacting and requires proof of actual loss supported by record evidence. The government has not established actual loss. The district court's award exceeded the statutory maximum. Mr. Barrino reserved the right to bring this exact appeal, and so the court should vacate the award. If the court has no questions, I'll reserve my time. Yes, you've saved time for rebuttal. Thank you. Mr. Spires, Mr. Ginsberg. Good morning. May it please the Court. My name is Jordan Ginsberg, and with Diane Copes and Appellate Chief Kevin Boydman, we represent the United States. And I was counsel before the district court. Claiming to act like a flexible spending account, TTFG's classic 105 program took money from enrollees based on false and fraudulent representations. Its Executive National Marketing Director, Joseph Barrino, was central to and instrumental in that fraud. When he pleaded guilty to misprision of wire fraud, Mr. Barrino admitted to knowing the representations were false for years, since approximately 2014, September. Counsel, why would you charge an individual with a conspiracy count, and you just emphasized how sprawling this was, and how serious it was, a conspiracy count, 2 through 6, false statements and false representations, 7 and 8, well, you know, he's been charged, but he's pleading guilty to misprision of felony? Why would he plead, why would the government accept a plea to misprision? Certainly Judge Engelhardt. It's the government's belief and contention that the evidence supported conviction on any of those charges at the state and nature of the case at that point. But they would dismiss, the charges would dismiss as part of the plea, right? That's correct. That's correct. But now he's disconnected from the conspiracy. If he's only pled guilty to misprision, he's not an active participant in the conspiracy anymore, correct, legally? He's not pleading guilty to the conspiracy, however, as this court has recognized. He's not pleading guilty to it, it's dismissed, the government dismissed it. It doesn't exist. Correct, however, for purposes of assessing things like the applicability of the MVRA and the appropriate restitution amount, the court has rejected a categorical approach and does consider what the defendant actually did. So the relevance here, notwithstanding the fact that he pled guilty to misprision of a felony, is to look and focuses on the specific defendant's conduct. And that's relevant to establish why the MVRA applies, and it applies because as this court recognized in Shaw as well as in Reinhart, the MVRA, in Reinhart, it applies to misprision matters. In Shaw, the court noted that a district court could look to the facts and circumstances of the offense of conviction to determine if the MVRA authorizes a restitution order. So yes, Judge Engelhardt, you're correct, he pled guilty to misprision, but nevertheless, the underlying facts are pertinent to establishing that the MVRA pled, notwithstanding the fact that Mr. Barrino's plea agreement acknowledged the MVRA applied, that it pled guilty to misprision. My question is more geared toward the amount than the application of the MVRA. How do you square what happened in this case with Bailey and Huey and some of these other cases that talk about what the government's burden is on restitution for a misprision? Certainly. So in this matter, the government established the quantifiable, and the district court found the overall quantifiable loss amount. It looked at the temporal scope of Mr. Barrino's conduct, and that's where they took into account, the district court took into account, the fact that he was first put on notice by virtue of the terms of the misprision factual basis in September of 2014, bringing the loss amount for restitution purposes down from over $25.5 million to $21.5 million, which was the amount that victims paid in administrative fees between the time Mr. Barrino knew of the charge, knew that the Classic 105 program was fraud, and the time that the program ended. The court then further, and appropriately so, took into account the amount of claims paid by TTFG, slightly over $287,000, to arrive at an appropriate restitution amount that focused on the temporal scope, result, and nature specifically of Mr. Barrino's conduct. And it's important to note that his conduct wasn't, while he pled to a misprision, the makes clear that his conduct was central to both the facilitation and the perpetuation of the fraud. But it sounds like the government wants to eat its cake and have it too, in the sense that it wants him to be held responsible for the conspiracy that he was alleged to have participated in, but it also wants the benefit of letting him plead to misprision with a much lower sentence in exchange for cooperation. Is that a fair statement of what happened? I don't think so, Judge Engelhardt. I think that there were respective benefits in any plea negotiation in this World War I. The defendant received substantial benefits as it relates to a lower guideline sentence, nine level reduction. He got the benefit of an incredibly low statutory maximum, which basically eliminated the district judge's ability to sentence him in accordance with what the other conspirators were sentenced to. Isn't that correct? It limited the statutory cap to three years. That was one of the benefits that Mr. Barrino received as a consequence of this plea. That was the sentence that other defendants received. Ms. Joachim, for example. He didn't even need a 5K or anything at that point. Ms. Joachim received approximately the same sentence, I believe, in another section of court, slightly a year, year and a day, I believe. And so there were certainly benefits as a consequence, but those benefits don't change the, under this court's precedent, the relevance of Mr. Barrino's underlying conduct, which he acknowledged by signing the factual basis, by not objecting whatsoever to the PSR. And so while there were benefits exchanged, that doesn't change the fact that the court appropriately and accurately relied on precedent, ample precedent, from this court in calculating an appropriate loss amount, restitution amount, of just under $21.3 million. And I would point out that this was a well thought out, robust, and rigorously employed principled methodology that the court relied upon. It relied upon the party's representations and agreement to determine that the MVRA applied. It then went on in terms of the restitution calculation. I would note that at page 1230 of the record, when considering what exactly the issue before the district court was, the defendant's restitution brief said, and I quote, the dispute between the government and defense is whether the money paid by the participant victims in restitution fees should be offset by the larger tax savings those participant victims enjoyed as a result. So to the extent that this is a question about whether this is a matter of offset as opposed to eligibility, it is certainly the government that maintains that this is a matter of offset. Before this court, the appellant has casted that as an ex ante matter of eligibility, but nevertheless, before the district court, Mr. Bruno acknowledged that they were, his words, participant victims, and that the matter before the court was determining an offset. And the court, unlike in other cases where the court has found that the restitution amount exceeded the statutory maximum, the court didn't do that here. The court focused on the temporal scope of the crime, reducing the period of the administrative fees received from the entirety of the scheme, unlike in Reinhart, the district court failed to do that there as this court recognized, lessening it to the time when Mr. Bruno first became aware of the fraud, September of 2014, taking into account his role in the fraud, facilitating and perpetuating the fraud, and then further reducing the restitution amount by the amount of claims paid. At that point, the court did all that it was supposed to do, both under the law and in terms of the rigorous methodology that employed. At that part, at that point, based on their own admission in the restitution brief, Mr. Bruno, the burden shifted to Mr. Bruno to propound an offset amount. And he didn't do it. He didn't do that before the district court. He has not certainly done that here. And that harm, so the court did right by this court's precedent in concluding both in terms of burden shifting as well as how to calculate the restitution amount. Now, even if the court were to go beyond the district court's position, and I would say that this matter of offset versus eligibility is important for three reasons. First, it determines the appropriate standard of review when it comes to the issue of restitution calculation. It also affects this burden of proof, this burden shifting that you've already heard about. And it also applies to the waiver applicability, both in terms of the waiver in the plea agreement as well as the waiver by virtue of the defendant's conduct and representations before the district court. And so I would submit that this is a matter in which the plea agreement waiver, in which Mr. Bruno acknowledged the MVRA applied and agreed and acknowledged not to appeal any restitution calculation determinations made by the district court. Those apply. And those apply here. And this is not an exceed statutory maximum case. A number of the cases that the appellant cited in his brief, the district courts in those matters did things that they didn't do here. In Sharma, excuse me, in Reinhart, for example, the court found that the statutory maximum was exceeded because the district court considered losses not caused by the offense of conviction. But the district judge here didn't do that. It was specifically targeted at the temporal scope. And as this court has recognized in Meredith, not everything is an exceed statutory maximum just because those words get thrown around. Where the court has focused on what constitutes an excess of statutory maximum determination in Reinhart and others, the district court presumptively took those lessons to heart, maybe even ex ante, and did right by reducing it by the amount of claims paid, as well as by the temporal scope of the specificity of Mr. Bruno's conduct. There seems to be little question in the record that he facilitated and perpetuated the scheme based on his position. And that's why the full $21.23 million in restitution is appropriate. And getting back to your original point, Judge Engelhardt, that's the reason why he, not withstanding the fact he pled guilty to a misprision, why he should be nevertheless held responsible for the specific conduct during the time in which he knew that Classic 105 was a fraud and kept time and again, over and over, as he admitted in the factual basis, facilitating and directing others to facilitate and perpetuate the lies and the fraud. Is it fair to say, and you're free to disagree with me, but is it fair to say that in regard to appeal waivers, that our case law on exceeding the maximum statutory amount is somewhat inconsistent or may need to be revisited, or do you think there's a consistent line of authority that can be relied on? I think the determination of what constitutes in excess of a statutory maximum in preparing has been certainly challenging to follow, but I don't think, Judge Smith, this is the case that requires the court to need to make that sort of overarching determination. Because in this case, based on the representations, the calculations, rather, that the district court undertook, this is clearly within the universe of cases that do not exceed the statutory maximum. What Mr. Bruno was complaining about is the district court's calculation, plain and simple. It was a difficult calculation, no doubt, but they do not contest the accuracy of the $21.5 million in fees paid during the temporal scope of Mr. Bruno's crimes, September 2014 through early 2017. They don't contest the amount of the reduction that the district court appropriately applied based on the claims that had been paid by virtue of the operation of this quasi-flexible spending account, $287,000, approximately 1%. And that's how the district court arrived, appropriately so, at its number. So Judge Smith, I think there is obviously the court has spent a lot of time considering the parameters of the exceed statutory maximum restitution cases. I don't think you need to have an overarching reanalysis of the entire heartland to conclude here that the appellate waiver applies as to the restitution calculation. Unless there are any further questions, the government will rest on its brief. Thank you, Mr. Ginsberg. Thank you. Mr. Fiers for rebuttal. Thank you. I think I'd like to start with the Reinhart case that the government cited throughout the argument here. There were two issues in the Reinhart case. There were two reasons that the appeal, that the restitution award in that case was erroneous. One was the temporal scope issue, and the government's correct that in this case the district court did properly adjust the restitution award to account for the temporal issue. But the other issue in Reinhart was that the district court had awarded losses that were not caused by the defendant's offense of conviction. Reinhart similarly was a misprision case, and the district court held the defendant liable for the entire scope of the conspiracy, but he had pled to misprision. And the exact same thing happened here. The government spent a lot of time talking about the scope of the conspiracy, talking about Mr. Barrino's relevant conduct. But that's not what we're interested in when we're looking at the MVRA. We're looking at the losses directly and proximately caused by the offense of conviction. And the offense of conviction here was misprision, not conspiracy. The other issue that I think is important to touch on here is the offset matter. Again, for the reasons we explained in our brief, the government never established that there was a loss. There was never a need for Mr. Barrino to establish offsets. Certainly in the district court, the language used might have been, well, the fees paid versus the offsets. But the heart of the matter was the government came forward with a fee amount. Here is what participants paid into the plan. Here's what was paid in medical claims. And then they stopped, and they said, District Judge, you need to make no other calculations or adjustments. But we know that's incorrect, because the way that this fraud was alleged, the way it was prosecuted, the way it was proven and admitted to, the plan only worked because it was sold as cost-neutral to participants. The plan only worked because they got to take the tax deductions. And the government knows this because the government has calculated the IRS loss and has obtained a restitution award in favor of the IRS from another defendant in another case. To then come into court and say, Mr. Barrino, you need to bring forth this IRS data, the government has the data. The government knows what the loss is. There is no burden that ever shifted to Mr. Barrino. The government's loss number is implausible on its face, and it exceeded the statutory maximum. SHRMA was clear, an amount that exceeds a victim's actual loss is an amount in excess of a statutory maximum. Here there was no loss. Every dollar of restitution awarded was in excess of the statutory maximum, and this court should vacate. Thank you. All right. Thank you, Mr. Spires. Your case is under submission, and the court will take a brief recess before hearing the final two cases.